WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Veronica Gonzalez,<br><br>Plaintiff,<br><br>v.<br><br>Social Security Administration Commissioner,<br><br>Defendant. | No. CV-12-02272-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's Title XVI application for supplemental security income based on disability.

**I.   BACKGROUND**

  **A.   Procedural Background**

Plaintiff Stephanie Veronica Gonzalez filed a Title XVI application for Supplemental Security Income benefits on March 25, 2009 alleging disability beginning July 1, 2008. (TR 19, 36, 120). Plaintiff was 26 years old on March 25, 2009 and listed her conditions on her application as depression, ADHD, anxiety, and PTSD. (*See* TR 120, 160). The claim was denied on May 11, 2009 and on October 29, 2009 upon reconsideration. (TR 19). A hearing was held on February 7, 2011 before an ALJ, who issued an unfavorable decision on March 24, 2001. (TR 19, 27). On August 28, 2012, after reviewing additional evidence, the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision. (TR 1–3).

1  On October 26, 2011, Plaintiff filed her Complaint for Judicial Review of the Administrative Determination of Claim (Doc. 1), which is the subject of this appeal. Plaintiff argues that the Court should vacate the Administrative Law Decision because: (1) the ALJ erred in rejecting the treating physicians' opinions without clear and convincing reasons for doing so (*Id.* at 13); (2) the testimony of Dr. Geary,[1] when considered on review, undermines the substantial evidence the ALJ based his findings on (Doc. 16 at 16); (3) the ALJ erred by rejecting Plaintiff's subjective symptom testimony without stating clear and convincing reasons (*Id.* at 21); and (4) the ALJ erred in not discussing the lay witness evidence (*Id.* at 24).

## II. LEGAL STANDARD

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted). If there is sufficient evidence to support the Commissioner's determination, the Court

---

[1] Dr. Brett Geary conducted a one-time examination of Plaintiff and her medical history. (TR 582–99). The Court considers his opinion as an examining physician.

- 2 -

cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

### A.     Definition of Disability

To qualify for disability benefits under the Social Security Act, Plaintiff must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B.     Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721.

The five steps are as follows:

1.     First, the ALJ determines whether Plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, Plaintiff is not disabled.

2.     If Plaintiff is not gainfully employed, the ALJ next determines whether Plaintiff has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id.* § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

3.     Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, Plaintiff is found disabled without considering Plaintiff's age, education, and work experience. *Id.* § 404.1520(d).

4.     At step four, the ALJ determines whether, despite the impairments, Plaintiff can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5.     At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). *Id.* § 404.1520(g)(1). If the claimant can make an adjustment to other work, then she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

1. With regard to steps 1–5, in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since March 25, 2009 (TR 21); (2) had the following severe impairments when considered in combination: a bipolar disorder, a mood disorder, NOS/depression, a post-traumatic stress disorder, an anxiety order (by testimony), and a history of polysubstance and alcohol abuse (TR 21–22); (3) did not have an impairment or combination of impairments specifically listed in the regulations (TR 22); and (4) had the ability to perform light, unskilled, simple, work with no requirement for public interaction (TR 25). As a result of this analysis, the ALJ found that Plaintiff "is capable of making a successful adjustment to work in jobs that exist in significant numbers in the national economy." (TR 27). Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act. (TR 20).

### III. ANALYSIS

Plaintiff limits her objections to the ALJ's findings regarding her mental impairments and, as stated above, argues that (1) the ALJ erred in rejecting the treating physicians' opinions without clear and convincing reasons for doing so (Doc. 16 at 13); (2) the testimony of Dr. Geary, when considered on review, undermines the substantial evidence the ALJ based his findings on (*Id.* at 16); (3) the ALJ erred by rejecting Plaintiff's subjective symptom testimony without stating clear and convincing reasons (*Id.* at 21); and (4) the ALJ erred in not discussing the lay witness evidence (*Id.* at 24).

### A. Whether the ALJ Properly Reviewed the Treating Physicians' Testimony

Plaintiff first argues that the ALJ erred by rejecting the opinions of Drs. Renedo and Sherman, the Plaintiff's treating physicians, without offering clear and convincing reasons. (Doc. 16 at 14). Plaintiff further argues the ALJ erred in adopting the opinion of Dr. Salk, an examining physician, over the two treating physicians. (*Id.* at 15).

#### 1. Legal Standard

A treating physician's opinion is generally afforded the greatest weight in disability cases. *See Magallanes*, 881 F.2d at 751. If not contradicted, a treating physician's opinion can only be refuted with clear and convincing evidence. *Orn v.*

*Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). However, "[w]hen there is a conflict between the opinions of a treating physician and an examining physician . . . the ALJ may disregard the opinion of the treating physician only if he sets forth 'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id.* (citation and quotation omitted). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (citation and quotation omitted).

### 2. Whether the ALJ Set Forth Specific and Legitimate Reasons Supported by Substantial Evidence in the Record

The Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence in the record. Specifically, the ALJ set out a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation thereof, and made findings.

First, the ALJ discussed Dr. Salk's examination in detail, as well as described the conflicting evidence of the treating physicians. (TR 22–24). Next, the ALJ stated his interpretation of the facts in light of Plaintiff's daily living and social functioning, as well as her functioning in concentration, persistence, or pace. (TR 24). The ALJ discussed Plaintiff's daily activities in detail: her daily visits from her relatives, household cleaning, personal grooming, and weekly visits to the grocery store. (TR 23). Additionally, the ALJ noted Plaintiff's pleasant manner and minimal problems in concentration. (TR 24). The ALJ concluded that Plaintiff had mild restrictions in her daily living, mild difficulties in social functioning, and moderate difficulties in her functioning in concentration, persistence, or pace. (TR 22–24).

Additionally, the ALJ summarized the conflicting medical opinions of the treating physicians. The ALJ noted that Dr. Renedo determined Plaintiff had "four severe functional limitations in three functional areas, five moderately severe to severe limitations in three functional areas, three moderate limitations in three functional areas and one mild to moderate limitation ion [sic] one functional area." (TR 24). In contrast,

the ALJ noted Dr. Sherman "*only* found that [Plaintiff] had seven moderate limitations." (*Id.* (emphasis added)). This contrast demonstrates the ALJ completed a "thorough review of the conflicting medical evidence." *Magallanes*, 881 F.2d at 751 (citation and quotation omitted). Specifically, this reflects the ALJ's consideration and interpretation of the inconsistent conclusions offered by Drs. Renedo, Sherman, and Salk.

The ALJ's decision to rely on Dr. Salk's testimony, instead of the conflicted treating physician testimony, is supported by substantial evidence in the ALJ's factual findings. Plaintiff's treating physicians consistently assessed her Global Assessment of Functioning (GAF) scores at moderate to mild levels.[2] Admittedly, the ALJ did not directly state why he rejected the treating physicians' conclusions, nor the weight given to each physician's opinion. Nevertheless, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to . . . draw inferences . . . if those inferences are there to be drawn." *Magallanes*, 881 F.2d at 755. Reviewing the ALJ's findings with the conflicting evidence of record leads to the specific and legitimate inference that the ALJ found Dr. Salk's testimony consistent with the record. This includes Dr. Salk's determination that Plaintiff suffered from moderate difficulty in concentration, persistence or pace, which is consistent with Dr. Renedo's that conclusion Plaintiff suffered from a moderate limitation in this area.

In sum, the Court holds that the ALJ set forth specific and legitimate reasons supported by substantial evidence of record through setting out a detailed and thorough summary of the facts, considering the conflicting clinical evidence, stating his interpretation thereof, and making findings. Accordingly, the ALJ did not commit legal

---

[2] A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998). GAF scores between 41 and 50 indicate serious symptoms or serious impairments in psychological, social, or occupational functioning. GAF scores of 51 and 60 indicate moderate symptoms. GAF scores between 61 and 70 indicate mild symptoms. Over a 16 month period, claimant's treating physicians and Terros providers rated her GAF scores of 55, 55, 49, 55, 65, 60, 55, and 60.

- 7 -

error.[3]

**B.   Whether the ALJ Committed Legal Error by Rejecting Dr. Geary's Opinion that Plaintiff's Mental Health Conditions Met or Equaled Listings 12.04, 12.06, and 12.07**

Plaintiff argues the ALJ lacked substantial evidence in support of his findings that the Plaintiff did not meet Listings 12.04, 12.06, and 12.08.[4] (Doc. 16 at 16–21). Specifically, Plaintiff argues Dr. Geary's report was timely submitted for review by the Appeals Council. (Doc. 16 at 16). As a result, Plaintiff argues Dr. Geary's report is "considered part of the evidence in record . . . subject to review when determining if the Commissioner committed legal error." (*Id.*). Plaintiff argues that the ALJ erred in not finding Plaintiff met Listings 12.04, 12.06, and 12.08 and that the AC failed to correct this error on review. (Doc. 16 at 17, 20).

**1.   Legal Standard**

The Appeals Council's denial of review is not subject to review by this Court. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). However, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Id.* at 1163. Plaintiff correctly asserts that the Court must consider the whole record, including Dr. Geary's opinion, in determining whether substantial evidence supports the ALJ's findings.[5]

---

[3] Plaintiff asserts that "[w]here the ALJ ignores or fails to properly refute the treating physicians' opinions, they will be accepted as true as a matter of law." (Doc. 16 at 15). Because the Court has found the ALJ did not commit legal error, the proper remedy is moot and need not be addressed by the Court.

[4] The statute describes the Listings as certain impairments recognized to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a)

[5] Along with Dr. Geary's reports, Plaintiff submitted reports from Dr. Joel Parker to the AC. (TR 4). Dr. Parker, on behalf of Child Protective Services, conducted a one-time examination of Plaintiff. (TR 570–81). On review, the Court considers Dr. Parker's opinion as part of the entire record.

- 8 -

### 2. Whether the AC Erred in Not Calling on the Services of its Support Staff

Plaintiff contends that the AC "must call on the services of its medical support staff" to consider the impact of Dr. Geary's opinion. (Doc. 23 at 12). In doing so, Plaintiff misapplies Social Security Ruling (SSR) 96-6p. The AC must call on its medical support staff when it receives additional medical evidence and "*in the opinion of the administrative law judge or the Appeals Council* [that evidence] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Social Security Ruling 96-6p at 4 (emphasis added). Because the AC affirmed the ALJ's findings, it is clear that the AC opined Dr. Geary's findings would not change the psychological consultant's findings. This Court does not review the AC's denial of review. *Brewes*, 682 F.3d at 1162. Accordingly, Plaintiff's contention that the AC was required to call upon its medical support is misplaced.

### 3. Whether Substantial Evidence Supported the ALJ's Findings

After considering the additional evidence of Dr. Geary's opinion with all the evidence in record, the Court finds that the ALJ's findings were supported by substantial evidence. Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. Dr. Geary opined that Plaintiff has marked difficulties in daily activities (TR 590), but his opinion is inconsistent with substantial evidence in the record. As the ALJ noted in his decision, Plaintiff informed Dr. Salk she washed dishes, did laundry, swept, mopped, prepared meals, took care of her children, and went shopping. (TR 23). Dr. Geary also opined that Plaintiff has marked difficulty in concentration, persistence, and pace. (TR 590). In contrast, the record contains substantial evidence that Plaintiff's concentration, persistence, and pace were within normal limits. (*See, e.g.*, TR 318, 370, 444, 454, 459, 574). The substantial evidence is supported by observations from Plaintiff's treating physicians, Drs. Sherman (TR 527) and Renedo (TR 532), as well as the examining physician Dr. Salk (TR 339). These observations,

when combined with the GAF scores, constitute substantial evidence in support of the ALJ's findings that Plaintiff did not have marked difficulty in concentration, persistence, and pace.

In sum, the Court has reviewed Dr. Geary's report and considered it with all the other evidence in record. The Court finds that substantial evidence in the record supports the ALJ's decision. Accordingly, the ALJ did not commit legal error.

### C. Whether the ALJ Erred by Finding Plaintiff Not Fully Credible Regarding her Subjective Symptoms and Complaint Testimony

Plaintiff argues the ALJ erred by finding her testimony was not fully credible. (Doc. 16 at 21–23). Plaintiff contends that the ALJ must give clear and convincing reasons for rejecting her credibility. (*Id.* at 22).

#### 1. Legal Standard

The Court's recent decision in *Trembulak v. Colvin* clarifies the ALJ's burden in finding Plaintiff not fully credible regarding her subjective symptoms and complaints. No. CV-12-02420-PHX-JAT, *Trembulak v. Colvin*, 2014 WL 523007 at *8–9 (D. Ariz. Feb. 10, 2014).

> An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96-7p at 2; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160–61 (9th Cir. 2008) ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341)).

> Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak*, 2014 WL 523007 at *8–9.

### 2. Whether the ALJ Made Specific Findings, Supported by the Record, which Provided Clear and Convincing Reasons to Explain His Credibility Evaluation

Concerning the first step, the ALJ found that Plaintiff presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. (*See* TR 25). At the second step, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause only some of the alleged symptoms." (*Id.*) As a result, the ALJ found Plaintiff not fully credible concerning her subjective symptom testimony. (*Id.*) Plaintiff argues the ALJ erred in the second step by failing to provide clear and convincing evidence for discrediting the Plaintiff's credibility. (Doc. 16 at 22–23).

"[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)). In determining credibility, the ALJ may consider at least several factors: "[Plaintiff's] reputation for truthfulness, inconsistencies either in [Plaintiff's] testimony or between [Plaintiff's] testimony and [Plaintiff's] conduct, [Plaintiff's] daily activities, [Plaintiff's]

- 11 -

1 work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [Plaintiff] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The Court finds that the ALJ made specific findings, supported by the record, which provided clear and convincing reasons to explain his credibility evaluation. The ALJ noted Plaintiff's contradictory statements given during her interview with Dr. Salk. (TR 22). Although Plaintiff stated that she would not ride on buses, she later admitted she would get off the bus if it was too crowded. (*Id.*) Similarly, the ALJ noted that Plaintiff made contradictory statements about her sleep habits. (TR 23) Plaintiff reported going to sleep at 11 PM and waking up at 10:30 AM, but she claimed that she slept only 7–8 hours a night. (*Id.*) When informed this would indicate she slept 11.5 hours a night, Plaintiff stated that she woke up at 7:30 AM and laid in bed until 10:30 AM. (*Id.*)

In addition, the ALJ noted Plaintiff's statements concerning her alcohol history were inconsistent with the evidence of record. (TR 22–23). The ALJ referenced Dr. Salk, who noted that Plaintiff informed him that she drank minimally, despite her medical record indicating a history of drinking "massive amounts of liquor." (TR 23). Moreover, the ALJ directly referenced Plaintiff's inconsistent testimony at her hearing: "[Plaintiff] testified that she had stopped drinking alcohol in February 2010, but told Dr. Salk that she had stopped drinking alcohol in September 2009." (TR 23). He concluded that this diminished Plaintiff's credibility. (*Id.*).

Furthermore, the ALJ noted that Plaintiff's records indicated a "significant pattern of improvement with medication taken as directed." (TR 24). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citing *Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir. 2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)).

In sum, the ALJ found Plaintiff not credible by making specific findings supported by the record that provided clear and convincing reasons to explain his credibility evaluation. Accordingly, the ALJ did not commit legal error.

### D. Whether the ALJ Erred in Not Discussing the Lay Witness Evidence

Plaintiff argues that the ALJ erred by failing to discuss lay witness testimony regarding Plaintiff's limitations. (Doc. 16 at 24–25). Plaintiff specifically argues that C.F.R. § 404.1513(d)(4) mandates that the ALJ consider lay witness testimony concerning the severity of Plaintiff's impairments and how they affect Plaintiff's ability to work. (Doc. 16 at 24). Plaintiff further argues that the third party statements corroborated Plaintiff's testimony and complaints. (Doc. 23 at 10). Specifically, Plaintiff argues that the lay testimony was consistent with Plaintiff's testimony regarding her difficulty in attending to her personal care, following instructions, and focusing on tasks. (*Id.*).

In determining the severity of a claimant's impairment and her ability to work, other non-medical sources may be reviewed. C.F.R. § 404.1513(d). When submitted, the ALJ must consider lay testimony that concerns a claimant's symptoms or ability to work. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Competent lay witness testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Here, the ALJ stated that he "considered opinion evidence" in making his finding. (TR 25). The ALJ gave reasons for rejecting Plaintiff's testimony that are equally relevant for the similar testimony of the lay witness. However, the ALJ cannot disregard lay witness testimony without comment. *Nguyen*, 100 F.3d at 1467. Therefore, this was error. Nevertheless, not all error warrants reversal of the ALJ's determination.

When an ALJ fails to discuss lay testimony concerning a claimant's impairments, the error can be found harmless unless it would "alter the ultimate disability nondetermination" when taken in context of the record as a whole. *Molina v. Astrue*, 674 F.3d 1104, 1116 (9th Cir. 2012) (citing *Robbins*, 466 F.3d at 885). Provided there

1  remains substantial evidence supporting the ALJ's decision and the error "does not
2  negate the validity of the ALJ's ultimate conclusion" it is harmless. *Batson v. Comm'r of*
3  *Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). If the ALJ has "validly rejected
4  the claimant's credibility," then the same evidence used to discredit the claimant's claims
5  also discredits the lay witness's claims. *Id.* at 1122 (internal citation omitted).

6        Here, the Court finds that the lay witness testimony corroborates Plaintiff's
7  complaints of difficulty in her daily activities, social interactions, and concentration.

8        However, the Court finds that the ALJ properly reviewed and discredited
9  Plaintiff's subjective complaints. *See discussion supra* Part III.C. As Plaintiff notes, the
10 lay witness testimony "corroborated [Plaintiff's] testimony and complaints" concerning
11 her difficult completing daily activities. (Doc. 23 at 10). The substantial evidence used to
12 discredit the Plaintiff's subjective statements also discredits the lay witness. *Molina*, 674
13 F.3d at 1122. Therefore, even when the lay witness testimony is considered, substantial
14 evidence in the record supports the ALJ's decision. *See discussion supra* Part III.B.3.
15 Thus, the ALJ's failure to discuss the lay witness testimony is harmless error.

16       In sum, the ALJ committed error by failing to discuss the lay witness testimony.
17 Despite this error, the ALJ's decision was supported by substantial evidence in the
18 record. Furthermore, because the ALJ properly discredited the Plaintiff's subjective
19 testimony and the lay witness testimony did not provide information beyond that
20 described by the Plaintiff, the ALJ's error does not negate the validity of the ALJ's
21 ultimate conclusion. Accordingly, the ALJ's error was harmless.

22 / /
23 / /
24 / /
25 / /
26 / /
27 / /
28 / /

## IV. CONCLUSION

Accordingly, the ALJ's denial of benefits is supported by substantial evidence and is not based on harmful legal error.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is AFFIRMED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate in this case.

Dated this 19th day of March, 2014.

_____
James A. Teilborg
Senior United States District Judge